Case number 318-0704, people of the state of Illinois, Appalachia, versus Robert Rogers, appellant. Thank you. Good morning. Good morning. Um, Mr. Nicolosi, do you want to get... I'm sorry. No, I don't. Mr. Fisher, do you want to start? Yes, thank you, your honor. Good morning, your honors. May it please the court and Mr. Nicolosi, I'm Mark Fisher with the Appellate Defender's Office representing the defendant in this case, Robert Rogers. Robert was convicted in a jury trial of three counts of criminal sexual assault, three counts of aggravated criminal sexual abuse, and one count of promoting juvenile prostitution. Specifically, the jury found that between October 1st, 2017 and mid-May of 2018, Robert engaged in various forms of sexual conduct with a minor, HH. Further, the jury found that Robert stood in a position of trust, supervision, or authority as to HH, and that on one occasion, he offered to pay her if she would have sex with a third person. Now, although the defendant was found that the offenses of aggravated criminal sexual abuse were lesser included offenses of, and therefore merged into the more serious offenses of criminal sexual assault, the judge therefore imposed four consecutive sentences in this case, three for criminal sexual assault, one for promoting juvenile prostitution for a total of 28 years imprisonment. The four issues are raised on appeal. In the first issue, Robert maintains he was not proved guilty beyond a reasonable doubt of criminal sexual assault because the state failed to establish that he stood in a position of trust, supervision, or authority as to the minor. He therefore asked this court in issue one to reverse the convictions of criminal sexual assault, to reinstate the convictions of the lesser included offense of aggravated criminal sexual abuse, and in the event your honors do not reverse and remand for additional proceedings as requested in issues three and four, Robert would also ask this court in issue one to remand for sentencing as to those offenses of aggravated criminal sexual abuse. In issue two, Robert maintains he was not proved guilty of promoting juvenile prostitution, and therefore asked your honors to reverse that conviction outright. Alternatively, the jury was not properly instructed as to the elements of promoting juvenile prostitution, and therefore in issue three, he would alternatively ask your honors to reverse and remand for additional proceedings. He seeks the same relief in issue four based on various instances of ineffective assistance of both trial and post-trial counsel. Now in argument today, I'd like to focus on issue one involving the offense of criminal sexual assault. Of course, if your honors have questions about other issues, I'd be of aggravated criminal sexual abuse and criminal sexual assault as charged in this case, namely that Robert, an adult, had sex with HH, a minor. But an additional element elevated the offense of aggravated criminal sexual abuse to the more serious offense of criminal sexual assault, and that was the element that Robert stood in a position of trust supervision or authority as to the minor. The legislature has made this offense based on this element more serious because where this type of relationship exists, the minor is more vulnerable or more susceptible to the defendant's sexual advances, and therefore the legislature has decided to afford additional protection to a minor who is sexually abused by an individual with whom she has this relationship. However, based on the evidence presented in this trial, Robert submits the state failed to prove that element beyond reasonable doubt. The evidence presented at trial showed that prior to October 2017, HH and her mother Donna Ferguson were homeless, and they were living out or sleeping in Donna's car. At some point, Donna apparently had a romantic relationship with John McMullen, an adult who shared Robert Rogers' residence. Based on that relationship, Robert offered to HH and her mother Donna to move into his residence, the residence that he shared with John McMullen, and that took place in October of 2017, and they remained there until mid-May of 2018. The evidence also showed that Donna was employed. She worked outside the house during the day. Robert was also employed, but he worked at night, so primarily he was at home during the day with John and with the minor HH. At most, what the evidence shows here is a landlord-tenant relationship, if you will, between the defendant and the minor, but no other relationship beyond the alleged sexual relationship. Now, when HH lived at Robert's she was 16 years old. She therefore did not need anyone to care for her during the day, to oversee her activities, to guide her, to support her, to attend to her in any way, shape, or form. In fact, HH testified at trial that Robert was not required to supervise her. He did not have any authority over her and did not have the right to tell her what to do. One of the state's arguments on appeal is that this court shouldn't be concerned with HH's subjective thoughts or beliefs about her relationship with Robert. Rather, this court should just objectively look at the evidence presented at trial. Well, first, looking at that evidence objectively that was presented at trial, there was no evidence that Robert stood in the position of trust, supervision, or authority as to the minor. And so, given the evidence in this case, HH would not have been any more vulnerable or susceptible to his sexual advances than she would have been to sexual advances made by any adult to her. Well, isn't the argument, Mr. Fisher, that she was well aware that basically she and her mother were living in this residence, brought us, and he had control over the residence as to who would be residing in that residence? Right. That's their overarching circumstance argument, isn't it? That's correct. That's correct. As I say, at most, a landlord-tenant relationship, probably more of a landlord-tenant relationship between the defendant and her mother, who is the other adult involved here, but a landlord-tenant relationship, she's living there. Well, yeah, but obviously a 16-year-old girl is going to be leaving the residence with her forced to leave the residence. Correct. Correct. Certainly, because Robert invited them to live at the residence, I mean, at any time, Robert could tell them, you know, okay, take off, I don't want you here anymore. But again, the question is, would she be forced to obey him? I mean, certainly, if she was being threatened or menaced by Robert, she could talk to Robert and they could leave. What are the elements of the offense the state must prove for this aggravating, for this conviction? So for criminal sexual assault, the state had to prove that the defendant had sex with H.H. And the defendant is not challenging that part of the jury's verdict, because that was a credibility question for the jury to decide. Fine. Let's go to the statute now. We know that that's, obviously, that's not in dispute here. What are the other elements? Not in dispute. So the other element for the greater offense of criminal sexual assault was that Robert stood in a position of trust, supervision, or authority as to the minor. That's the element the state had to prove that the defendant is arguing was not proved beyond a reasonable doubt in this case. Now, the contrary to the state's argument, You don't think that authority covers the state's overarching view? Well, the state primarily argues that what was established here was a question of authority. Now, the case law in interpreting the statute, in particular, this element of criminal sexual assault, focuses basically on the plain language of these words, trust, supervision, and authority. As are explained in the briefs, case law has interpreted authority to mean the power to command, enforce laws, exact obedience, determine, or judge. And under the circumstances of this case, defendant argues Robert did not have any of that type of authority over the minor. What was the first element in case law you gave us? I'm sorry, your honor? You described authority in case law, and the first term you said? Right. The power to command, enforce laws, exact obedience. Well, I'm going to ask this question. Is the power to command that element of authority that the state overarching says this relationship of residence, landlord-tenant, if you will, that is basically tenant at sufferance, so to speak? Okay. Would that fall under that first little description, authority? I don't believe it does. As I say, the minor testified that he had no authority over her, didn't have the right to tell her what to do. Now, there was evidence that from time to time, he would ask her to do some chores around the house. She testified she did them, but there was no indication that she was required to do them. She specifically testified that he could not have invited her and her mother to move into the house. Certainly, he would have had the authority to say, well, I invited you in, so now I've decided I no longer want you to live here. But is that the type of relationship that would make her more vulnerable, more susceptible to a sexual advance from him, as opposed to a sexual advance from any other adult? And I would submit that- Wouldn't it be the command to leave my premises? Well, I would say to your honor that if someone said to me, a landlord, for example, you have two choices. You can either submit to this criminal conduct that I'm going to foist upon you, or you can leave. I would say, I'm gone tomorrow, Mr. Whatever. I mean, there's no showing that she had to stay there. I think if you're talking about the worse or the better of two evils, the better is to take off or to complain to her mother and her mother to bring, you know, look, if you continue to make this demand, I'm going to report you to the police and hey, we're going to be gone anyway. So I don't think there's any showing she would have had to stay in that circumstance. There's also testimony that there were some sexual advances that she rebuffed. Now, the defendant and the state have discussed some cases in the briefs where Illinois reviewing courts have, including this court, have upheld criminal sexual assault convictions. Finding this element was proved, and I would submit to your honor that those cases were different. In one case, the defendant was the track coach at the minor complainant school. Another case, the defendant was the babysitter and the complainant testified she thought of him like family. And in the third case, the complainant was at the beach, wanted to go for a swim, knew how to swim, was physically able to, but was blind. So needed assistance from someone to assist her in the water so she could return safely to shore. The defendant offered his assistance. She placed her trust in him. And I would submit to this court that those cases are different. In People v. Secord, this court said the purpose of this element of criminal sexual assault is to prevent sex offenses by those in whom a child would tend to obey, such as a teacher or coach, and those in whom a child would place his trust. Here, the evidence and H.H.'s testimony, I think, specifically shows she didn't place trust or guidance in Robert, would not have tended to obey him. And so for these reasons, Robert's respectfully asking your honors in issue one to reverse the convictions of criminal sexual assault, but then to reinstate those charges of the lesser included offenses of aggravated criminal sexual abuse. And if your honors do not reverse and remand for additional proceedings as requested in issues three and four, Robert also asks in issue one for a remand for sentencing as to the less serious offenses of aggravated criminal sexual abuse. And unless your honors have additional questions. Are there any other questions? Okay. Thank you. Thank you, your honors. Mr. Nicolosi. Thank you. May it please the court counsel. My name is Justin Nicolosi. I'm the appellee representing the state of Illinois in this matter. The state submits that the evidence presented against the defendant did prove him guilty of criminal sexual assault. And more specifically, it proved beyond a reasonable doubt that the defendant was in a position of trust supervision or authority over HH. What Mr. Nicolosi is a sentencing range, if you know, for aggravated criminal sexual abuse, the lesser which were found to be lesser included offenses under criminal sexual assault. I unfortunately don't know that off the top of my head. I know that the range for I believe sexual assault was four to 15. But I don't know criminal sexual abuse off the top of my head. I'm sorry. Okay, thank you. As Mr. Fisher correctly described, the statute does not define authority, but it has been defined as using a dictionary definition as this court and C core has, has posted and Mr. Fisher rattled off that authority means the power to command and force laws exact obedience, determine or judge. The state submits that the defendant's relationship to to HH basically satisfies every one of those sub definitions of authority, as the landlord to the tenant HH and his and her mother. I don't think there's really any debate here as Justice holdridge pointed out during Mr. Fisher's argument that the defendant had the ability to evict HH and her mother whenever he wanted. This was not a typical landlord tenant relationship in respect to where there's a contract and things like that. Now, as Justice Holdridge said, this was basically an arrangement the defendant allowed that HH and her mother to live there out of the goodness of their heart at his heart. And at the beginning, they were homeless. Yeah, all of that is my construction over the relationship. But what is there in the evidence that there that HH was either aware of it, or responded to that scenario? Your Honor, I don't believe or is that or is that necessary? Yeah, that's where I was going, Your Honor, I don't believe that HH's subjective perception of what the relationship was really matters at all, according to the statute. In this case, I think that the plain fact is that the defendant was HH's landlord, and he had the ability to kick her out whenever he wanted for whatever reason he came up with. Just because she didn't have to listen to him or obey him or any of these things as she testified to, as I alluded to in my brief, I don't think HH is not talking about the kind of authority that this statute contemplates. She's talking about things like the defendant can't tell her to go to bed or study for this or do that, or, you know, whatever the kind of things that the kind of authority that a mother or father has in that respect, that that's the way the state would interpret HH's testimony. And again, regard, it doesn't matter what her, her perception of the relationship was, the one only all that matters is the actual relationship that existed between these two people. And Mr. Nicolosi, do you agree that there were times when Mr. Rogers made advances and she Yes. Does that undercut your argument? No, it does not, Your Honor, because there are several instances where she felt like she had to comply with those advances. And that relationship to her, wouldn't he stand in that relationship to her at all times? Well, sure. As Justice Holdridge referred to during Mr. Fisher's argument, that that's the more overriding theme here. And that that's what the state is hanging its hat on and did a trial to that, just because I don't think you can parse out every little interaction between the defendant and HH and pointing at times where they didn't have sex, even though maybe he, you know, solicited her to do that or sent her a Facebook message to do that. I don't think you can look at every one of those individual circumstances as pointing the fact that he didn't have It's not a good freeze. I lost you. Yeah, we lost you. Oh, would you like to repeat what you had said? Oh, boy, it was brilliant. I don't know if I'm going to get it back. But something that I don't believe, I don't believe we can parse out every little independent instance between defendant and HH. For example, as you mentioned, Justice McDade, instances where they didn't have sex, even though the defendant wanted to, and may have sent HH a message indicating that he wanted to. I don't think I think as Justice pointed out during Mr. Fisher's argument, that what we need to focus on is the overriding, the overarching theme or the overarching relationship between the defendant and HH. And that was undeniably that defendant was her landlord and had the ability to kick her out and basically make her do whatever he wanted. And the state submits that there's plenty of evidence that the defendant had that authority and he that he wielded that authority quite often. Go ahead, Justice Holtage. Mr. Nicolosi, do you think that the minor trusted that the defendant met what he said when he said if you comply by doing chores, and if you comply by engaging in sexual favors for me, I'll let you stay? Do you think she trusted that statement? Perhaps not, Your Honor, as Mr. Fisher mentioned in his reply brief, that the fact that the defendant did not kick HH and her mother out, despite the repeated threats to do so is evidence that he didn't, that he didn't have the authority over and that she didn't trust. And I would certainly posit that that would be evidence that he didn't, she didn't trust what he said, because he really didn't follow through on it before. But again, I think focusing on the overarching factors at play here, the fact is the defendant could have kicked them out at any point. So at any point, he could have followed through on those many threats that he presented to HH. But I think it shows that HH was complying with him and his request just enough to the fact that that that she believed that. Where was I going with that? My question. Thank you. Okay. All right. Thank you. So any... Holdridge, just just one second, Mr. Nicolosi. Justice Holdridge, you had a question? No, no, I think he, he covered it well enough. Okay, I have a question. If you had a situation where, say, for example, she had a dog, and he threatened that he was going to do something to the dog, if she didn't comply with what he did, how would you charge that? Would you charge that under trust and authority? Considering also the facts of this case, like where she... Just my hypothetical. If you had some kind of situation where there was the capability of exerting duress or force, how would you charge that? Well, I guess I would think that would be under authority as well. I would think if the defendant was the landlord in your hypothetical, and there was a dog, which there was a dog in this case, of course, and the defendant threatened to let the dog loose. But I would think that would be under the definitions of authority, the power to command, to enforce laws. I mean, if the defendant decided that I was going to release this dog because I don't want it living in my house, and you're living in my house, I would think that would be exerting authority over the individual as well, yes. And anytime you had a sexual offense that involved a landlord and a tenant, you would think that it would be appropriately charged under this section? I don't know about every time. I'm sure there could be some fact patterns where it would be maybe a tad different. But in this case, I believe the record and the evidence is clear that the defendant had the authority over HH. And going even further than that, as I argued kind of at the end of my brief in issue one, that I focused primarily on authority, but I think there's even evidence that the defendant was in a work during the day. Defendant was home during the day. Defendant was basically the primary adult home with HH. And while HH testified again that defendant didn't have the ability to tell her what to do, she didn't obey him. I think the fact remains that he was in a position of supervisory authority over her. In addition to having that overarching authority that he had in this case, especially with the mother not home. So you're saying that any time there's a minor and adult present inherently, there's a local parentis which then falls under supervision? I certainly think an argument can be made in that respect. Yes. It's not the primary argument I'm making in this case, but I think there is some evidence to support that argument here anyway. The fact that the minor was home all day, wasn't in school. And again, the defendant had asked her to do certain things. And so there was chores and talking about the wifi and all these other things. So there was some type of a relationship there where it's not like the child ran the house. Obviously the defendant owned the house, ran the house. So I think there's evidence here that supports the argument that supervision was established. But again, I think primarily that this case falls on whether or not the defendant was in a position of authority over HHNA. And the state submits that the evidence here resoundingly comes to that conclusion that the defendant was in a position of authority and that the jury or that the defendant was proven guilty beyond a reasonable doubt, including that element. If there are any other questions, I'd be happy to answer them, but those are those conclude my comments on this topic. Any other questions? No. Thank you. Thank you, Mr. Fisher. Any rebuttal? Your mic is off there. Yeah. Your microphone is muted. I apologize. I think. Thank you, Your Honor. I apologize to the court. First in response to, I believe it was Justice Holdridge's question about the classification of the felonies here. Criminal sexual assault, class one. Aggravated criminal sexual abuse, class two. I believe the so-called regular or normal class one and class two sentencing ranges. In, again, briefly, Mr. Nicolosi argues that HH's subjective belief about relationship with defendant, not particularly relevant. People versus Grohl, G-R-O-E-L, which is a decision of this court. One of the cases discussed in the briefs, that's the case where the defendant was the individual who was the primary babysitter for the child and the child testified that she thought of him like family. And this court considered that testimony very strongly in finding in that case that the defendant was in a position to trust supervision or authority. So I would argue to the court that HH's subjective belief was very important, very relevant, both to the jury's determination and ultimately to this court's decision on appeal. Counsel, Mr. Nicolosi correctly said that because they're in the same house during the day that the two, the complainant, of course, in any case where this type of or any sexual charge is alleged, the defendant, of course, has to have access. But the mere fact of access does not establish the position of trust supervision or authority. That does not differentiate this situation or it doesn't differentiate any situation in which any adult has sex with a minor, because that's included within aggravated criminal sexual abuse. There has to be something more. And apparently the legislature has determined that in this case, the something more is the particular relationship that makes the minor more vulnerable. I would also mention that HH's testimony, and of course, your honors have the record and can go through her testimony. My take on it is she testifies that when Robert made advances towards her, she felt uncomfortable and didn't know what to do, but not because he was a landlord or had any supervision or trust authority over her or because she placed her confidence in him or would obey him, but simply because he was an adult. And again, that fits aggravated criminal sexual abuse. It does not elevate the offense to criminal sexual assault. Here, there was simply no relationship between the two that would fit the charge of aggravated criminal sexual assault. And Mr. Nicholas, he alternatively argues that at the very least, Robert supervised the minor because they were together in the house during the day. Again, she was 16 years old. Now, she was a younger child. I might agree with Mr. Nicolosi's argument, but she's 16 years old. There's no evidence that he needed to prepare meals for her, to drive her any place to oversee her activities, that she was in need of his assistance or guidance during the day. And you wouldn't expect that given her age of 16. Yes, she's a minor for purposes of the statute, but because of that, his mere presence in the house during the day, yes, it allows the offense to take place, but it does not make her more vulnerable unless it does not place him in a vulnerable position. So, in the event of additional questions, Robert would again simply reiterate his request that your honors reverse the class one convictions of criminal sexual assault, reinstate the class two offenses of aggravated criminal sexual abuse and remand so that the judge can sentence him for those offenses in the event your honors do not reverse and remand for further proceedings, which is the relief requested in issues three and four. Any other questions? Thank you. Thank you, your honors. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in recess until noon. Thank you.